Oller, Luzzi & Breslin, LLC
46 Wilson Drive
Sparta, New Jersey  08781
Telephone:  (973) 983-7020
Telefax:       (973) 983-7030
By:  Richard Luzzi, Esq.
Attorney for Plaintiffs Scott Neuman, Tracy Caprioni, Robert DeBella, and Patricia Lindsay-Harvey

| | |
|---|---|
| Scott Neuman; Tracy Caprioni; Robert DeBella; and Patricia Lindsay-Harvey, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY TRENTON VICINAGE |
| *Plaintiffs,* | |
| *vs.* | *Civil Action No.* _____ |
| Ocean County Democratic County Committee; Ocean County Democratic Candidate Selection Sub-Committee; Ocean County Democratic Organization; Wyatt Earp;  Marta Harris;   Chris Leitner; Brian White; Ronald Madensky; Kieran Pillion; James Keady; Michael B. Cooke; Edward Wolf; Marianne Clemente; "John Does 1-50" (*fictitious names*); and Ocean County Clerk Scott M. Colabella (injunctive relief only), | |
| *Defendants,* | |
| *and* | |
| Frederick John LaVergne; Lorna Philipson; Donald Yacavone; Eric Beechwood; and David Cole, | |
| *Interested Parties.* | |

## I. JURISDICTION:

1.      Jurisdiction to entertain Plaintiffs' Federal Constitutional and statutory claims asserted in the First County is vested in the United States District Court pursuant to 28 *U.S.C.* §1331. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 *U.S.C.* §2201 and 28 *U.S.C.* §2202 (the Federal "Declaratory Judgment Act"), by 28 *U.S.C.* §1361 (the Federal "Mandamus Act"), by *Rule* 57 and *Rule* 65 of the Federal Rules of Civil Procedure, the *Local District* Rules, and by general legal and equitable powers of this Court.  Jurisdiction to entertain Plaintiffs' New Jersey State Law Claims as asserted in the Second Count is vested in the United States District Court pursuant to 28 *U.S.C.* §1367.

## II. VENUE:

2.      Venue is proper in the District of New Jersey generally, and the Trenton Vicinage specifically, pursuant to 28 *U.S.C.* §1391.

## III. THE PARTIES:

3.      Plaintiff Scott Neuman is a resident of Ocean County and was an announced candidate for the Office of Ocean County Freeholder seeking the official endorsement of the Ocean County Democratic County Committee and the "County Line" on the June Political Primary Election Ballot.  Plaintiff Scott Neuman has a constitutional right to seek such endorsement and placement in the "County Line" in a free and fair election process.

4.      Plaintiff Tracy Caprioni is a resident of Ocean County and was an announced candidate for the Office of Ocean County Freeholder seeking the official endorsement of the Ocean

County Democratic County Committee and the "County Line" on the June Political Primary Election Ballot.  Plaintiff Tracy Caprioni has a constitutional right to seek such endorsement and placement in the "County Line" in a free and fair election process.

5.      Plaintiff Robert DiBella is an elected Member of the Ocean County Democratic Committee who lives in Congressional District 3 and who is in good standing and was eligible as a "Regular Delegate" to case a single ballot and a single vote at the March 19, 2016 Mini Convention toward the endorsement of a candidate seeking the Democratic Party Endorsement and the "County Line" on the June Political Primary Election Ballot.

6.      Plaintiff Patricia Lindsay-Harvey is an African American Woman who is an elected County Committee Member from Willingboro and who was present and who cast a single ballot for Interested Party Frederick John LaVergne at the Burlington County Mini Convention for Congressional District 3.    Plaintiff Patricia Lindsay-Harvey is constitutionally entitled to have her vote counted and "weighted" the same in the Political Primary Process as all other voters in Congressional District 3 in Ocean County.

7.      Defendant Ocean County Democratic County Committee is a political organization established, created, governed and regulated by Title 19 of New Jersey State Statutes and is required to comply with all Federal and State constitutional and statutory restrictions, and is further required to abide by and follow the By-Laws and the existing and established Rules and Policies of the Ocean County Democratic County Committee.  At all times relevant herein this Defendant was acting pursuant to a policy, custom or usage, and was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

3

8.    Defendant Ocean County Democratic Candidate Selection Sub-Committee is a subcommittee of Defendant Ocean County Democratic County Committee and is required to comply with all Federal and State constitutional and statutory restrictions, and is further required to abide by and follow the By-Laws and the existing and established Rules and Policies of the Ocean County Democratic County Committee. At all times relevant herein this Defendant was acting pursuant to a policy, custom or usage, and was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

9.    Defendant Ocean County Democratic Organization is another entity related to the Ocean County Democratic County Committee and is a political organization established, created, governed and regulated by Title 19 of New Jersey State Statutes and is required to comply with all Federal and State constitutional and statutory restrictions, and is further required to abide by and follow the By-Laws and the existing and established Rules and Policies of the Ocean County Democratic County Committee. At all times relevant herein this Defendant was acting pursuant to a policy, custom or usage, and was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

10.   Defendant Wyatt Earp is the duly elected Chairman of the Ocean County Democratic County Committee and as such is an "At Large Delegate" who, because of the many positions he holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election. At all times, when acting alone, and when conspiring with

the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

11.    Defendant Marta Harris, former Vice-Chair of the Ocean County Democratic County Committee and Co-Chair of the Ocean County Democratic County Committee Candidate Selection Sub-Committee.  Defendant Marta Harris is an "At Large Delegate" who, because of the many positions she holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election.  At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

12.    Defendant Chris Leitner, Sergeant at Arms of the Ocean County Democratic County Committee and Co-Chair of the Ocean County Democratic County Committee Candidate Selection Sub-Committee.  Defendant Chris Leitner is an "At Large Delegate" who, because of the many positions he holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election.  At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

13.    Defendant Brian White was a Member of the Ocean County Democratic County Committee Candidate Selection Sub-Committee and the person who actually drafted the new "Rules" creating "At Large Delegates". Defendant Brian White is an "At Large Delegate" who, because of the many positions he holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election. At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

14.    Defendant Ronald Madensky is a duly elected Member of the Ocean County Democratic County Committee, and in such capacity is a "Regular Delegate" entitled to one ballot and one vote in such capacity at the March 19, 2016 Mini Convention toward the endorsement of a candidate seeking the Democratic Party Endorsement and the "County Line" on the June Political Primary Election Ballot. Defendant Ronald Madensky also holds other positions in the Defendant Organizations and as such is also an "At Large Delegate" who, because of the many positions he holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election. At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

15.    Defendant Kieran Pillion is a duly elected Member of the Ocean County Democratic County Committee, and in such capacity is a "Regular Delegate" entitled to one ballot and one vote in such capacity at the March 19, 2016 Mini Convention toward the endorsement of a candidate seeking the Democratic Party Endorsement and the "County Line" on the June Political Primary Election Ballot. Defendant Kieran Pillion is also an elected official and further holds other positions in the Defendant Organizations and as such is also an "At Large Delegate" who, because of the many positions he holds, was issued multiple ballots and was permitted to cast multiple votes in the process of the election to determine which candidates would receive the formal endorsement of the Ocean County Democrats and the right to appear on the "Party Line" at the June Primary Election. At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.


16.    Defendant James Keady did **not** meet the Defendant Organizations' January 28, 2016 deadline, nor did he at any time submit the required written Resume and Biography, nor did he submit to personal interview before a valid *quorum* of the Candidate Selection Sub-Committee, and as such Defendant James Keady is ineligible to be considered for formal endorsement and to appear on the "County Line" at the June 2016 Political Primary Election in Ocean County. This Defendant committed violations of State Law when collecting and certifying and submitting Ballot Petition Signatures and Ballot Petitions relative to Defendant James Keady. At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

17.    Defendant Michael B. Cooke wrongly and knowingly conspired with defendants Wyatt Earp, Marta Harrison, Chris Leitner, Brian White, Ronald Madensky, Kieran Pillion, James Keady, Edward Wolf, Mariannee Clemente and "John Does 1-50" to implement a process and plan that violated the clearly established Federal Constitutional rights of the Plaintiffs and to otherwise violate the existing Rules and Policies and By-Laws of the Organization Defendants, all with an improper purpose of assisting the goal of assisting Republican Candidates.    This Defendant committed violations of State Law when collecting and certifying and submitting Ballot Petition Signatures and Ballot Petitions relative to Defendant James Keady.    At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

18.    Defendant Edward Wolf was intending to run as a "place holder" for Sheriff, but was forced to run as a "place holder" for Freeholder when Plaintiffs Tracy Caprioni and Scott Neuman walked out because of the blatantly illegal and unconstitutional voting procedures being used at the March 19, 2016 "Mini Convention"  This defendant wrongly and knowingly conspired with defendants Wyatt Earp, Marta Harrison, Chris Leitner, Brian White, Ronald Madensky, Kieran Pillion,  James Keady, Michael B. Cooke, and "John Does 1-50" to implement a process and plan that violated the clearly established Federal Constitutional rights of the Plaintiffs and to otherwise violate the existing Rules and Policies and By-Laws of the Organization Defendants, all with an improper purpose of assisting the goal of assisting Republican Candidates.  At all times,

when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

19.    Defendant Mariannee Clemente is a duly elected Member of the Ocean County Democratic County Committee, and in such capacity is a "Regular Delegate" entitled to one ballot and one vote in such capacity at the March 19, 2016 Mini Convention toward the endorsement of a candidate seeking the Democratic Party Endorsement and Party Line in Congressional District 3.  It is not known whether this Defendant was given additional Ballots as an "At Large Delegate".  This Defendant committed violations of State Law when collecting and certifying and submitting Ballot Petition Signatures and Ballot Petitions relative to Defendant James Keady.  At all times, when acting alone, and when conspiring with the other Defendants, this Defendant was acting "under color of State law" within the meaning of 42 *U.S.C.* §1983.

20.    Defendants "John Does 1-50" (*fictitious names*) are yet to be identified individuals that conspired to make the last minute change to the Rules to create "At Large Delegates", who conspired to have Defendant Michael B. Cooke withdraw from the Congressional race in the Third Congressional District and instead run for Freeholder on the *quid pro quo* that Defendant James Keady would be permitted to run for the endorsement and the "County Line" in the Third Congressional District despite being ineligible for consideration for same.

9

21.  Defendant Ocean County Clerk Scott M. Colabella is charged with New Jersey State Law with configuring and printing the Election Ballots for the June Primary Election and is joined for injunctive relief purposes only.

22.  Interested Party Frederick John LaVergne is an announced candidate for the office of United States House of Representatives in the Third Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered at the Ocean County "Mini Convention" for formal endorsement and for the right to appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Third Congressional District.

23.  Interested Party Lorna Philipson is an announced candidate for the office of United States House of Representatives in the Fourth Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered at the Ocean County "Mini Convention" for formal endorsement and for the right to  appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Fourth Congressional District.

24.    Interested Party Donald Yacavone is an announced candidate for the office of United States House of Representatives in the Fourth Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered at the Ocean County "Mini Convention" for formal endorsement and for the right to appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Fourth Congressional District.

25.    Interested Party William Hutton is an announced candidate for the office of United States House of Representatives in the Fourth Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered at the Ocean County "Mini Convention" for formal endorsement and for the right to  appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Fourth Congressional District. On information and belief this Interested Party has dropped out of the race.

26.    Interested Party Eric Beechwood is an announced candidate for the office of United States House of Representatives in the Second Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered

at the Ocean County "Mini Convention" for formal endorsement and for the right to appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Second Congressional District.

27.    Interested Party David Cole is an announced candidate for the office of United States House of Representatives in the Second Congressional District who met the Defendant Organizations' January 28, 2016 deadline and who otherwise complied with all Rules and Policies of the Defendant Organizations so as to be entitled to be considered at the Ocean County "Mini Convention" for formal endorsement and for the right to appear on the "County Line" at the June 2016 Political Primary Election. This Interested Party had the right to do so in a fair and open election with participation only from the "Regular Delegates" from Municipalities in Ocean County located in the Second Congressional District.

## IV. THE FACTS:

28.    As a result of the 2010 Decennial Census of the entire United States, the 50 States and all United States Territories were determined to have a total combined "census population" of 308,745,535 people.   The State of New Jersey was determined to have a census population of 8,791,894 people.

29.    After the completion of the 2010 Decennial Census, and by operation of what today is commonly referred to as "*The Automatic Apportionment Act of 1929*" (*see Act* of June

18, 1929, Chapter 28, Section 22 (46 *Stat.* 26), as amended by *Act* of April 25, 1940, Chapter 152 (54 *Stat.* 162), as amended by *Act* of November 15, 1941, Chapter 470, Section 1 (55 *Stat.* 761), as amended by Public Law 104-186, title II, Section 201, August 20, 1996 (110 *Stat.* 1724), now codified at 2 *U.S.C.* §2a) the Clerk of the House of Representatives transmitted a certificate to the Governor of New Jersey formally notifying the Governor that the State of New Jersey was to thereafter be apportioned 12 Members of the 435 voting Members of the United States House of Representatives.

30.    The United States Constitution's Article I, Section 4 provides as follows:

> \* \* \*
>
> Section 4.   The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

[*United States Constitution, Article I, Section 4*].

31.    As part of the Federal Constitutional delegation of the right to New Jersey to regulate the "*Times, Places and Manner of holding Elections for ... Representatives*". Since 1995 the State of New Jersey has relied upon a "Redistricting Commission", a an entity created by the *New Jersey State Constitution* (1947) after amendment adopted in 1995, to draw the lines and boundaries for Congressional Districts in a "Congressional Districts Map", doing so in the number automatically apportioned to New Jersey in the 2 *U.S.C.* §2a(b) "Certificate" from the Clerk of the United States House of Representatives. By automatic operation of New Jersey State Constitutional Law, the "Congressional Districts Map" delineates the Congressional Districts until after the next Census.

32.    Ocean County is a Municipal subdivision of the State of New Jersey located along the coast line of the Atlantic Ocean to the South of Monmouth County, to the North of Atlantic County, and to the East and North of Burlington County.  At the 2010 Decennial Census Ocean County was determined to have "census population" of 576,567 people. After the New Jersey Redistricting Commission drew the formal "Congressional Districts Map", three Congressional Districts – District 2, District 3, and District 4 – included Municipalities, or parts of Municipalities, in Ocean County.

33.    As further exercise of the Federal Constitutional delegation of the right to New Jersey to regulate the "*Times, Places and Manner of holding Elections for … Representatives*", the New Jersey Legislature has by statute heavily regulated "Political Parties" since 1930 in an effort to reduce the influence of political "Party Bosses" and to attempt to ensure that a small minority does not manipulate the political candidate nominating process so as to improperly control what would otherwise be the choice and will of the majority.

34.    "Political Parties" are defined and created by New Jersey statute automatically upon the General Assembly candidates of a political organization receiving at lest 10% of the votes cast in the most recent General Election from all Members of the General Assembly, which since 1947 has been every two years on odd numbered years. Moreover, once achieving "Political Party" status and having been certified as such by the Secretary of State, a "Political Party" must form a "State Committee" and a "County Committee" in each of the 21 Counties.  Moreover, each local "Election District" in each Municipality may elect (at the Political Primary Elections in June) two Members to the County Committee in the County where the Municipality is located, and the entirety of

14

the Membership of the County Committee is required to meet to vote for and to select a "County Chairman" and a "County Vice-Chairman". The State Committee and various 21 County Committees are then also statutorily required to formally adopt "By-Laws" to govern their conduct so that arbitrary and unexpected action are not taken, and all are also required (a recent change in the law) to provide a copy of the By-Laws to the County Clerk and also to post accurate copies of the By-Laws on their website. The State statutory framework also provides for election challenges and contests to be brought in the State Court system. Most important, "State Committee Members" and "County Committee Members" must be elected in fair and open democratic elections.

35.   As far as candidates for public office, all candidates whose name is to appear on the November General Election Ballot must be selected at "Political Party Primary Elections" held the prior June. A Political Party Candidate obtains access to the Political Party Primary Election Ballot by obtaining a certain number of signatures from Party Members in the Congressional District on a "Nominating Petition" which is then filed with the Secretary of State on or before a specific statutory date and deadline. This year that date was Monday April 4, 2015, and the deadline was 4:00 p.m.

36.   To ensure fairness and to further delimit the influence of Political Party Bosses that may represent the views and opinions of a minority of the Members of the statutory County Committee, in 1930 the New Jersey State Legislature made it illegal for a State or County Committee to formally endorse any candidate over another prior to the June Political Primary Election. *See N.J.S.A.* 19:34-52.

37.     This restriction was effectively *de facto* overruled as unconstitutional as violating the Free Speech and Associational Rights of Political Organizations as otherwise guaranteed by the First and Fourteenth Amendments to the United States Constitution 59 years later by the United States Supreme Court's ruling in *Eu v. San Francisco Democratic Central Committee,* 489 *U.S.* 214 (1989), and was thereafter specifically ruled unconstitutional as to *N.J.S.A.* 19:34-52 itself on the identical legal grounds in *Batko v. Sayreville Democratic Organization,* 373 *N.J.Super.* 93, 101 (App. Div. 2004).

38.     Therefore, notwithstanding *N.J.S.A.* 19:34-52 (which despite being ruled unconstitutional the New Jersey Legislature has not repealed), it is clear that statutory County Committees of statutory Political Parties may endorse specific candidates for specific offices sought prior to the Political Party Primary Election, and that a statutory County Committee may also associate endorsed candidates together in a "County Line" on the Political Primary Election Ballot each June. This is particularly important because the candidates who run on the "Party Line" virtually always win the Political Primary Election, and the right to appear on the following November General Election Ballot as the Party's Candidate.

39.     The power of a County Committee in New Jersey generally, and the collective Ocean County Democratic Defendants specifically, to endorse one candidate over another, and to award the "County Line" to one candidate over another, also requires that any procedure used for endorsing and awarding the "County Line" must be accomplished by using a free, open, fair, democratic, and constitutional process. *See, Tashjian v. Republican Party of Connecticut,* 479 *U.S.* 208 (1986) and *Eu v. San Francisco Democratic Central Committee,* 489 *U.S.* 214 (1989); *see also Ocean County Democratic*

16

*Organization By laws,* (Last Amended March 23, 2014), Article II, Section 2 ("*In accordance with the principles of the Democratic Party of the State of New Jersey and of the United States, <u>equal opportunity to participate in all activities carried on by the Democratic Party shall be given to all qualified persons</u> ...*" (emphasis added)). (A true and accurate copy of the "Ocean County Democratic Organization By-Laws" are attached hereto at **"Exhibit A",** hereinafter "the By-laws".)

40.    Duly Elected Members of a Political Party's elected County Committee, when voting whether to endorse a candidate for the United States House of Representatives, or for Freeholder, and whether to permit such candidate to appear with other Federal, State and Local candidates on the Party's "County Line" at the June Primary Election, are acting under New Jersey statutory Election Laws, enacted in furtherance of the State's delegated, Constitutional authority to regulate the "*Times, Places and Manner of holding Elections for ... Representatives*", (Federal Constitution Article I, Section 4) and are otherwise governed by the Equal Protection Clause of the Fourteenth Amendment, and the Fifteenth Amendment.

41.    Under such circumstances the duly elected members of the County Committee, when implementing and promulgating rules for endorsement elections, and when conducting the elections to determine endorsement of candidates, and when determining whether a candidate will be permitted to appear on the "County Line" with other candidates on the June Primary Ballot, are engaging in statutorily authorized and regulated conduct that equates with "State action" for purposes of imposing liability under 42 *U.S.C.* § 1983. (*See generally, United States v. Classic,* 313 *U.S.* 299 (1941); *Smith v. Allwright,* 321

*U.S.* 649 (1944); *Terry v. Adams,* 343 *U.S.* 461 (1953); *see also Max v. Republican Committee of Lancaster County,* 587 *F.3d* 198 (3d Cir. 2009) ("... there may well be situations where the actions of a primary election are deemed to be state action [for purposes of § 1983] ...').

42.    Since the elected County Committee members are "*acting under color of New Jersey State Law*" when using a voting or selection process to determine candidate endorsement and "Party Line" permission for candidates for the Federal office of United States House of Representatives and the County office of Freeholder, and since they are engaging in "*state action*" within the meaning of 42 *U.S.C.* § 1983, the Members of the County Committee are required to abide by restrictions imposed by **(1)** The United States Constitution's "Elections Clause" (Article I, Section 4, Clause 1), **(2)** The United States Constitution's Fourteenth Amendment's "Equal Protection Clause"; **(3)** The United States Constitution's First Amendment made applicable by virtue of the Fourteenth Amendment; **(4)** the United States Constitution's Fifteenth Amendment, and **(5)** The United States Constitution's Nineteenth Amendment.

## THE "ONE PERSON – ONE VOTE" RULE:

43.    The right to vote is protected in more than the initial allocation of the franchise: "... [T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Simms,* 377 *U.S.* 533, 555 (1964); *see also Baker v. Carr,* 369 *U.S.* 186 (1962); *Gray v. Sanders,* 372 *U.S.* 368 (1963); *Moore v. Ogilvie,* 394 *U.S.* 814 (1969); *Westbury v. Sanders,* 367 *U.S.* 1 (1964); *Kirkpatrick v. Preisler,* 394 *U.S.* 526

(1969); *Brown v. Thomson,* 462 *U.S.* 835 (1983); *Bush v. Gore,* 531 *U.S.* 98  (2000); *Evenwel v. Abbot,* ___ *U.S.* ___, slip opinion (April 4, 2016).

44.     In this regard, the Fourteenth Amendment's "Equal Protection Clause" and the principles espoused therein, apply as well to the manner of the voting exercise.  More directly stated, "... *[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."* *Bush v. Gore,* 531 *U.S.* 98, 104-105 (2000) (*Per Curiam*).  Otherwise stated, "...*once the franchise is granted, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.*"  *Harper v. Virginia Board of Elections,* 383 *U.S.* 663, 665 (1966); *see also Bush v. Gore,* 531 *U.S.* at 105 (*Per Curiam*).  This is a simple, clear and concise explanation of the elementary yet bedrock Constitutional principle of "one person – one vote" that has been distilled out of the Equal Protection Clause of the Fourteenth Amendment and other portions of the Constitution by the Supreme Court. It is understood my all adult members of society who participate in our political process.

> An early case in our one person, one vote jurisprudence arose when a State accorded arbitrary and disparate treatment to voters in different counties. *Gray v. Sanders,* 372 *U.S.* 368 (1963).  The Court found a constitutional violation.  We relied on these principles in the context of the Presidential selection process in *Moore v. Ogilvie,* 394 *U.S.* 814 (1969), where we invalidated a county-based procedure that diluted the influence of citizen's in larger counties in the nominating process.  There we observed that **"[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government."**  *Id.* at 819. (Emphasis added).
>
> [*Bush v. Gore,* 531 *U.S.* at 107].

45.     The Fifteenth Amendment to the United States Constitution provides, in relevant part, "*The right of citizens to vote shall not be denied or abridged ... by any State on account of race, color, or previous condition of servitude.*" The Nineteenth Amendment provides in relevant part: "*The right of citizens of the United States to vote shall not be denied or abridged ... by any State on account of sex.*" The discriminatory political scheme used by the Ocean County Democrat Defendants in the Third Congressional District Primary Process – in the same election as is occurring in the Burlington County portion of District 3 - results in African American disenfranchisement and / or dilution of Women (and African American Women) votes in the process of selecting Democratic Party endorsed candidates and awarding the "Party Line" in the Political Party Primary Process violates the Fifteenth and Nineteenth Amendments. *See, Terry v. Adams,* 345 *U.S.* 461 (1952).

**THE LAST MINUET CREATION AND USE OF "SPECIAL AT LARGE DELEGATES" GIVEN MULTIPLE BALLOTS  AND VOTES WAS *PER SE* UNCONSTITUTIONAL**

46.     The Ocean County Democratic County Committee has for the last several decades, at least, utilized the same credentialing, balloting and selection procedures at the annual "Mini Convention" when voting whether to endorse a particular candidate for public office generally, and when determining whether to endorse a candidate for the office of United States House of Representatives and Freeholder specifically.  Indeed, the prior procedures used were always consistent with, and substantially similar to, the fair and open and democratic procedures used throughout New Jersey by the Democratic and Republican County Committees in all 21 Counties.

47.    As required by New Jersey State law, the Ocean County Democratic County Committee Members adopted "By-Laws", provided a copy to the Ocean County Clerk and  posted them on the County Committee's Website.  **(Exhibit A)**  The elected Members of the Ocean County Democratic County Committee also elected a County Chairman and Vice-Chairman as is required by *N.J.S.A.* 19:5-3, and by Articles IV and V of the "By-Laws". Defendant Wyatt Earp was elected and is presently serving as the Ocean County Democratic County Chairman of the County Committee.

48.    Article II of the By-Laws provides as follows:

>   Section 1.  The objectives of this Organization shall be to further the principles of the Democratic Party; to aid in the election of Democratic candidates; to assist in the promotion and development of good government whether national, state, county or municipal.

>   Section 2.  In accordance with the principles of the Democratic Party of the State of New Jersey and of the United States, equal opportunity to participate in all activities carried on by the Democratic Party shall be given to all qualified persons without regard to race, religion, age, sex, economic status or any attribute irrelevant to the right of individual freedom.

>   [By-Laws, Article II].

49.    Regarding endorsing candidates and awarding the "County Line" on the Primary Election Ballot, in accordance with the authority granted to the elected Democratic County Chairman in Article VIII of the "By-Laws" to "… *further the purposes and objectives set for the in Article II of these By-Laws …*", an "Ocean County Democratic County Committee Candidate Selection Sub-Committee" would be appointed each year, consisting of approximately 20 or more Members of the County Committee in good

standing.  Defendants Marta Harrison and Chris Leitner were appointed to this Sub-Committee and were appointed "Co-Chairs" of this Sub-Committee for 2016.

50.    As Co-Chairs, and consistent with past practice, Defendants Marta Harrison and Chris Leitner fixed a specific time deadline for candidates seeking the office of House of Representatives to file a formal written "Letter of Intent" with the Sub-Committee, and fixed a specific time deadline for such candidates to submit a detailed written Resume and Personal Biography.  These Policies and Rules were then concurred in and ratified by a quorum of the members of the "Ocean County Democratic County Committee Candidate Selection Sub-Committee".  This year the deadline established was January 28, 2016.

51.    Thereafter, but always before March 1 of an election year, the timely and complying Congressional Candidates seeking the Ocean County endorsement were additionally required to sit before a quorum of the Sub-Committee for a personal interview. During the interview each candidate would be questioned in detail regarding their political views, personal history, and other issues deemed important.  Thereafter, the Sub-Committee was empowered to make a recommendation favoring a given candidate over others, or the Sub-Committee was empowered to decide to make no recommendation.  In either event, the final decision on what Congressional Candidate would receive the official endorsement and a place on the "Party Line" on the June Primary Election Ballots in Ocean County would be determined by a plurality vote of the County Committee Members from the Municipalities in the Congressional District, who appeared at the

"Mini Convention". No Proxy Votes are permitted by those that did not attend the "Mini Convention".

52.    These simple, mandatory requirements, established by a long time, continuing, and consistent Policy of the Ocean County Democratic County Committee, were specifically unique regarding candidates seeking the offices of House of Representatives and United States Senate (as opposed to all other State, County and Local offices) The reason for the deadline, Resume and Biography, and in person interview, is primarily attributable to the fact that several Congressional Districts have, for decades, covered parts of Ocean County. Thus, there would be a mechanism of identifying and adequately screening and informing the County Committee Members regarding potential Congressional Candidates who could come from as many as 9 other Counties, and who may not be known to anyone in Ocean County; and to do so well in advance of the "Mini Convention" so that there would be no surprise to the Committee Members. Nothing in the process prohibit a candidate from seeking the Democratic nomination if the deadlines were missed, and the Rules and Policies not complied with, but such a deficiency would make the candidate ineligible for endorsement and a spot on the "County Line".

53.    For the 2016 selection process; only two Candidates met the January 28, 2016 deadline and other mandatory requirements for consideration for endorsement and the "County Line" in the Second Congressional District (Interested Parties Eric Beechwood and David Cole), and two Candidates met the deadline and requirements for consideration and endorsement in the Third Congressional District (Interested Party Frederick John LaVergne and Defendant Michael B. Cooke); and four Candidates met the deadline and

other mandatory requirements in the Fourth Congressional District (Interested Parties Lorna Phillipson, Don Yacavone, William Hutton, and Plaintiff Scott Neuman).

54.    Burlington County held their Democratic County Committee "Mini Convention" on Thursday March 3, 2016 two weeks before the Ocean County Mini Convention was to be held on Saturday March 19, 2016.  At the Burlington County Mini Convention only County Committee Members from District 3 were allowed to cast a ballot regarding the District 3 race, with each County Committee Member being given one ballot.    At the Monmouth County Mini Convention only County Committee Members from District 4 were allowed to cast a ballot, with each given one ballot and one vote in the process.

55.    At the Burlington County Mini Convention four candidates met the requirements there to be considered for Party endorsement and the coveted spot on the "County Line" -- including Interested Parties Frederick John LaVergne and Michael B. Cooke -- with Frederick John LaVergne overwhelmingly winning the Burlington County Democratic Party endorsement and the right to appear on the "County Line" at the June Political Primary Election in Burlington County.  The other two candidates, having not even qualified for consideration by Ocean County, dropped out of the race thereafter. Moreover, Burlington County makes up almost ¾ of the anticipated Political Primary Election votes in District 3, and the Democratic candidate for Congress in District 3 with the "Party Line" in Burlington County has never lost the Primary Election.  Therefore, it was reasonably contemplated and frankly expected that for the good of the Democratic Party Defendant Michael B. Cookee would also drop out of the race in Congressional District 3 so that there would not be a contested Primary Election and so that the

24

Democrats could immediately start to focus on fundraising and on the Republican opponent and the November 2016 General Election.

56.    Monmouth County held its Mini Convention on March 12, 2016, one week before the Ocean County Mini Convention held on Saturday March 19, 2016.  At the Monmouth County Convention four candidates met the requirements to be considered for Party endorsement and the "County Line" in Congressional District 4 – Interested Parties Lorna Phillipson, Don Yacavone, William Hutton, and Plaintiff Scott Neuman – with Interested Party Lorna Phillipson overwhelmingly winning the Monmouth County Democratic Party endorsement and the right to appear on the "County Line" at the June Political Primary Election in Monmouth County for Congressional District 4.  At the Monmouth County Mini Convention only County Committee Members from District 4 were allowed to cast a ballot for the race in District 4, with each County Committee Member only being given one ballot and one vote in the process.

57.    All four candidates referenced in the preceding paragraph had met the Ocean County January 28, 2016 deadline and otherwise complied with the Rules and Policies of the Sub-Committee and as such all four candidates were eligible to be considered for endorsement and the "Party Line" for Congressional District 4 at the Ocean County Mini Convention.  However, since Monmouth County makes up almost 2/3 of the anticipated Primary Election votes in Congressional District 4, to prevent or minimize the drain on Democratic resources that inevitably occurs in a contested Primary Election, Plaintiff Scott Neuman dropped out of the race and received permission from Defendant Wyatt Earp to instead seek the nomination for the County Office of Freeholder in Ocean

County, where there was still an opening and one Democrat candidate still needed. As of Monday March 14, 2016, less than a week before the Ocean County "Mini Convention", the only candidates seeking a Freeholder seat (with two openings) was Plaintiff Tracy Caprioni, and without Plaintiff Neuman taking action for the good of the Party, the Ocean County Democrats would not even have had two Freeholder candidates. Interested Party William Hutton also unconditionally dropped out of the race in Congressional District 4 and did not appear at the March 19, 2016 Ocean County "Mini Convention". Interested Parties Lorna Phillipson and Don Yacavone both continued to pursue the Ocean County nomination is what has become a contested Primary Election.

58. Interested Party Frederick John LaVergne enjoyed overwhelming support from the rank and file Members of the County Committee in the Municipalities in Ocean County located in Congressional District 3. Having overwhelmingly won the Party endorsement and "County Line" in Burlington County, it was reasonably expected that a strong majority the Members of the Ocean County Committee from Municipalities in Congressional District 3, would cast their one ballot and vote for him.

59. However, while the rank and file County Committee Members in Congressional District 3 supported Frederick John LaVergne, certain "Party Bosses" and members of the Ocean County Democratic Party Leadership – specifically including but not limited to Defendants Wyatt Earp, Marta Harrison, Chris Leitner, Ronald Madensky, Kieran Pillion, Edward Wolf, Mariannee Clemente and "John Does 1-50" (*fictitious names*), opposed Frederick John LaVergne for his anti corruption stances, and for his criticisms of the political and business relationships engaged in between these defendants and George

Gilmore, New Jersey State and Ocean County Republican Chairman. (On information and belief, the Democratic Leaders have effectively allowed Republicans to control the Ocean County Democratic Party in return for a few political patronage jobs, and have acted to impede Democrat Candidates from winning anywhere in Ocean County. For instance, on information and belief, Defendant Marta Harrison is in charge of "recruiting" candidates to run for local municipal office. With 54 Republican or Independent incumbents up for re-election this November 2016, Defendant Marta Harrison did not recruit a single Democratic candidate to run against the Republicans by the filing deadline. Interestingly, Defendant Marta Harrison's husband obtained a "patronage job" where her husband works for Ocean County (which is controlled by the Republican Party). And Marta Harrison herself had just taken a "patronage job" in Lakewood Township (Lakewood Township is solidly Republican). It is rumored that Defendant Chris Leitner takes little interest in Democratic Candidates actually getting elected. County Chair Wyatt Earp, being busy in a Union job, tends to take a hands off approach and apparently defers to his delegatees, such as Defendants Marta Harrison and Chris Leitner who had each been appointed "Co-Chairs" of the Candidate Selection Sub-Committee.

60.    Mindful of the reality of numbers, the bedrock legal maim that of one man one vote and comfortable that he had the support of a substantial majority of the rank and file County Committee Members in Ocean County Municipalities in Congressional District 3, Interested Party Frederick John LaVergne and his supporters in Burlington and Ocean County, including Plaintiffs, were confident that he would win a majority of the votes over Defendant Michael B. Cooke, the only other announced candidate and the only other

candidate eligible for consideration of Party endorsement at the Ocean County Mini Convention. Plaintiffs Tracy Caprioni and Scott Neuman similarly expected to win the nomination and endorsement for Freeholder as they were unopposed.

61.     In the weeks before the Ocean Mini Convention Plaintiffs Tracy Caprioni, Scott Neuman and Representatives of Interested Party Frederick John LaVergne repeatedly requested from Defendant Marta Harrison a specific list of those County Committee Members in Congressional District 3 who were in good standing, and who would be issued credentials and given a ballot to vote at the "Mini Convention" in the Congressional District 3 contest between Frederick John LaVergne and Defendant Michael B. Cooke. All requests were ignored until just a few days before Mini Convention.

62.     On Tuesday March 15, 2016 at 11:39 p.m. (20 minutes before midnight) Defendant Marta Harrison forwarded by email a one page document referred to as the proposed "Mini Convention Rules" dated March 20, 2016 (the day AFTER the Ocean Mini Convention) , a true copy of which is attached hereto at **"Exhibit B".** Now for the first time, instead of limiting the voting to County Committee Members who lived in Municipalities located in the Congressional Districts, and limiting each such person to one ballot, suddenly there was a proposal to completely radically change the Rules and Procedures.

63.     What was thereafter casually referred to (but not referred to in the proposed "Convention Rules – Rules Committee" as new "At Large Delegates" and "At Large Ballots") were a new form of "Super Delegates", or at least Ocean County's version of same. Under these

new last minute Rules, the "Convention Chair" could appoint up to 5 persons to a "Ballot Committee", up to five persons to a "Credentials Committee", a Sergeant at Arms and an Assistant Sergeant at Arms, each who would get a ballot. Additionally, new "At Large Delegates" including the Executive Board Members of the Ocean County Democratic County Committee; Federal, State and County Elected Officials who represent Ocean County, Members of the Screening and Recruitment Committee, State Committee Members, and up to 12 additional "At Large" Delegates appointed by the Chairman would all get a ballot and a vote. The proposed rules also specifically provided that one ballot would be given *__for each position held__*, specifically stating that *"* * * 4. Individuals who serve in more than one capacity __shall vote in each and every of these capacities for each ballot position__ ..."* whereas *"... Regular Delegates may only vote for those candidates for whom they are eligible to vote for in the primary and general election."* See **"Exhibit B"**.

64. While a Municipal County Committee Member living in a Municipality located in Congressional District 3 such as Plaintiffs could cast one ballot (and thereby 1 vote) for their choice in Congressional District 3, now their 1 vote would be counted against as many as 6 ballots (counted as 6 votes) from a single "At Large Delegate", including persons who did not even live in a Municipality in Congressional District 3! Such a procedure unconstitutionally granted significantly greater weight to the multiple votes permitted to be cast by "At Large Delegates" when compared to the 1 single vote permitted to be cast by "Regular Delegates" such as Plaintiffs. As noted, *"[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government."* Bluntly stated, the "new" (and un-

adopted) Policy and Rule of granting multiple ballots (and thereby multiple votes) to "At Large Delegates", while simultaneously granting one ballot (and thereby only 1 vote) to "Regular Delegates" in this election process, is *per se* unconstitutional. And the entirety of the results of the Ocean County Mini Convention must be declared void.

65.     Moreover, District 3 includes persons in Ocean and Burlington Counties.    Plaintiff Patricia Lindsay-Harvey, an African American Woman who is a Burlington County Committee Person from Willingboro and who cast a vote for Interested Party Frederick John LaVergne in the Democratic Primary Process, has had her vote diluted by this *per se* voting process in violation of the Fifteenth and Nineteenth Amendments.

### THE "NEW" CANDIDATE IN DISTRICT 3 IS PERMITTED TO SEEK ENDORSEMENT AND THE COUNTY LINE LONG AFTER THE JANUARY 28, 2016 DEADLINE HAD PASSED:

66.     Moreover, at 12:15 p.m. on Friday, Defendant James Keady, a Waretown bartender who lives outside Ocean County and outside District 3, "announced" on Facebook® that he would be seeking the Democratic nomination in Congressional District 3 at the Ocean County Mini Convention the next day.   On information and belief, defendants Marta Harrison, Chris Leitner, Michael B. Cooke, Mariannee Clemente and John Does 1-50 (fictitious names) met with Keady in a bar in Waretown on St. Patrick's Day 2016, and concocted a plan to interfere with the Interest Party Frederick John LaVergne's campaign to protect their arrangement with a Republican Party "Boss".  The purported plan was for Defendant Cooke to withdraw from the race in the Third Congressional District at the last minute, then seek to run for Freeholder in Ocean County, and Defendant Keady would now run for Congress in District 3.  Defendant Keady did not meet the January 28, 2016

deadline, nor did he at any time submit the required Resume and Biography, nor did he at any time submit to personal interview before a *quorum* of the Candidate Selection Sub-Committee. Thus, Defendant Keady was not eligible to seek the Party endorsement or Party Line.

67. That evening Keady and his supporters called County Committee Members in Ocean County who lived in Congressional District 3 and advised each such County Committee Members that they did not need to come to the Mini-Convention "... *because LaVergne is guaranteed to win over Cooke, so why waste a Saturday morning.*" While sleazy back stabbing politics, this is not necessarily a constitutional violation but is included to show evidence of the conspiracy and a pattern under *F.R.Evid.* 404(b). Because of this many many such Regular Delegates who supported Interested Party Frederick John LaVergne, stayed home and did not bother to attend the Mini Convention believing that he would be essentially unopposed.

68. At the Mini Convention, after conferring with Defendant Chairman Wyatt Earp, formal objection was made to Defendant Chris Leitner, who was the Seargent at Arms (there was no Parliamentarian), objecting to the "new" Rules permitting "At Large Delegates", and further request was made for specific information as to exactly WHO would be voting, and exactly HOW MANY ballots would given to each specific "At Large Delegate" in light the fact that many persons held as many as six positions in the Democratic Party. This information was refused, and neither the "At Large Delegates" nor the number of ballots each was given was ever disclosed, and has not been disclosed to date. On information and belief, approximately 25 County Committee Members from

District 3 were present, yet well over 100 ballots were distributed and over 100 votes cast. Also, specific objection was made to permitting a "new" candidate to be considered in defendant Keady as he was barred from consideration by the By-Laws, Rules and Policies as having not met the January 28, 2016 deadline or any of the other mandatory requirements. Defendant Chris Leitner joked that " ... *we probably should not have referred to the deadline and other requirements as a 'Policy' ...",* then sarcastically and condescendingly stating that "... *Keady's name is being moved in District 3, that is it, do what you feel you have to do if you don't like it* (clearly referring to suing in Court) ...".

69. Despite being used, the new Rules were never presented to the County Committee nor voted on by the County Committee or otherwise adopted, nor was any statement made by the Chairman that new Rules were being adopted, but the "New" Rules and the new "At Large Delegate" with multiple ballots for certain (never identified persons) was used anyway.

70. The balloting started with Congressional District 3. Interested Party Frederick John LaVergne and his supporters were not permitted access to see who was being handed how many ballots and were advised to "stay away from the table". One person, David Schlick, who lives in Congressional District 2, but who supports Interested Party Frederick John LaVergne, was not advised by Defendants of the "New" Rules being used which would have permitted him to cast a ballot and vote in District 3 because Defendants were well aware he would vote for Interested Party Frederick John LaVergne. County Committee Member Ann Marcus was given a ballot and one vote which she cast

in protest as a write in vote for Barry Bendar. This ballot unexplainably disappeared and was not counted.

71.    After the ballot box was stuffed with multiple ballots, only then were representatives of Interested Party Frederick John LaVergne allowed to watch the "count", though this was irrelevant as there was no way to determine which were multiple "At Large Delegate" ballots and which were "Regular Delegate Ballots." Defendant Keady was awarded the endorsement and County Line by the "At Large Delegates" whose multiple votes predominated those of the actual "Regular Delegates". While less than 25 persons were available in District 3, Defendant Keady was "awarded" well over 100 votes!

72.    As the entire voting procedure was a sham, and for other offensive remarks overheard not necessarily relevant hereto, Plaintiffs Tracy Caprioni and Scott Neuman, and their supporters, walked out in protest for the outrageous treatment of Interested Party Frederick John LaVergne without even permitting their names to be moved for consideration for Freeholder in this clearly illegal and unconstitutional process. Unwilling to submit to a clearly unconstitutional and illegally and rigged voting process, and instead wishing to avail themselves of relief from the Courts to seek and demand a fair and Constitutional process.

## V. <u>LEGAL CLAIMS:</u>

## <u>FIRST COUNT:</u>

73.    42 *U.S.C.* §1983 was enacted by Congress to provide citizens with a remedy for State action that deprives or is aimed at depriving a person of their rights as secured and guaranteed by the United States Constitution and laws.

74.    42 *U.S.C.* §1983 provides as follow:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person in the jurisdiction thereof to be deprived of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purpose of this section any act of Congress applicable exclusively to the District of Columbia shall be considered a statute of the District of Columbia.

75.    42 *U.S.C.* §1983 provides a remedy for state action aimed at depriving persons of their rights as protected and guaranteed by the Constitution and laws. 42 *U.S.C.* §1983, in addition to other remedies, authorizes declaratory relief, injunctive relief, nominal damages, compensatory damages, punitive damages and attorneys' fees.

76.    For a party to prevail in an action under 42 *U.S.C.* §1983, it must be shown that [1] there has been / is / will be a violation of that party's rights as guaranteed and secured by the Constitution or Federal laws, and [2] that such violation was caused either directly or by conspiracy or by a pattern, practice, usage or custom, by a "person" acting under the color of state law.

77.    At issue in this case are Plaintiffs' rights to Equal Protection of the Laws as guaranteed and secured by the Fourteenth Amendment to the United States Constitution, rights guaranteed by the First Amendment to the United States Constitution, rights guaranteed by Article I, Section 4 of the United States Constitution ("The Elections Clause"), rights

guaranteed by the Fifteenth Amendment to the United States Constitution, and rights guaranteed by the Nineteenth Amendment to the United States Constitution.

78.    Defendants Ocean County Democrats and the Ocean County Democratic County Committee and Sub-Committee Members are entities that, under the circumstances, qualify as "*state actors*" who were "*acting under color of state law pursuant to a policy and practice and plan and design*" within the meaning of 42 *U.S.C.* §1983 and they have individually and collectively engaged in and conspired to engage in illegal conduct which has proximately resulted in damage, and continues to proximately damage, Plaintiffs.

79.    The individually named defendants acting under "*color of state law*", specifically Wyatt Earp, Marta Harris, Chris Leitner, Michael B. Cooke, James Keady, Ronald Madensky, Kieran Pillion, Edward Wolf, Mariannee Clemente and "John Does 1-50", all wrongfully conspired with each other to violate existing Rules, Policies, and By-Law provisions of the Ocean County Democratic Organization, and further wrongfully acted so as to create and implement proposed new unconstitutional Policies and Rules to permit a mutated version of democracy where "At Large Delegates" were given multiple ballots and votes, diluting and devaluing to an unconstitutional level the one ballot and one vote given to Regular Delegates in Ocean County and Burlington County in District 3.

80.    Defendant Ocean County Clerk Scott M. Colabella is charged by New Jersey Law with preparing the Primary Election Ballots and Sample Ballots and is joined as a party Defendant strictly so that there is jurisdiction for the Court to enter temporary and permanent injunctive relief as requested herein and as may be necessary.

35

### SECOND COUNT:

81.    The Defendants failed to at any time properly adopt the new Mini Convention "Rules" (found at **"Exhibit B"**) and as such, use of "At Large Delegates" was a violation of the By-Laws and existing Rules and Policies, and as such all endorsements made there under are void.

82.    Moreover, permitting Defendant Keady to be considered for endorsement and the Party Line at the March 19, 2016 Ocean County Mini Convention was done in clear and violation of the Democratic Organization By-Laws and existing Rules and Policies. As the County Committee as a whole did not vote to relax such Rules and Policies, or vote to make any such changes in accordance with the By-Laws, Keady's endorsement is void and must be declared so.

### VI.  REQUEST FOR RELIEF:

A.)    Judgment pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2202 (the Federal "Declaratory Judgment Act") and *Rule* 65 declaring that the Defendants' Rule and Policy of using "At Large Delegates" was unconstitutional, violated the constitutional rights of Plaintiffs, and declaring void all endorsements made at the March 19, 2016 Ocean County Democratic Mini Convention;

B.)    Judgment pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2202 (the Federal "Declaratory Judgment Act") and *Rule* 65 temporarily enjoining Defendant Ocean County Clerk Scott M. Colabella from taking any action on the June 2016 Democratic Primary Election Ballots and Sample Ballots in Congressional District 3 until further Order of the Court;

**C.)**   Judgment pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2202 (the Federal "Declaratory Judgment Act") and *Rule* 65, and 28 *U.S.C.* §1361 (the Federal "Mandamus Act") and *Rule* 57 appointing a "Special Master" to be paid by Defendants, and Ordering Defendants to, under the supervision of the appointed "Special Master", conduct a new "Mini Convention" and election without using "At Large Delegates" and limiting those eligible to vote on the endorsement of a given candidate to only those "Regular Delegates" who can vote for the office of the candidate at issue at the General Election;

**D.)**   Judgment pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2202 (the Federal "Declaratory Judgment Act") and *Rule* 65, and 28 *U.S.C.* §1361 (the Federal "Mandamus Act") and *Rule* 57 barring Defendant James Keady from being considered for endorsement for his failure to comply with January 28, 2016 deadline and his failure to comply with all other applicable Rules and Policies;

**E.)**   Judgment removing Defendants Wyatt Earp, Marta Harris, Chris Leitner, Brian White, Ronald Madensky, Kieran Pillion, Michael B. Cooke, Edward Wolf, Mariannee Clemente and "John Does 1-50" (*fictitious names*) from holding any elected or appointed Office or Position within the Ocean County Democratic Organization for their intentional, unconstitutional and illegal manipulation of a Federal Election, and barring such Defendants from seeking or holding any elected or appointed Office or Position within the Ocean County Democratic for a period of 5 years;

**F.)**   Judgment awarding each Plaintiff nominal damages;

**G.)**   Judgment awarding each Plaintiff compensatory damages;

**H.)**   Judgment awarding each Plaintiff punitive damages;

**I.)**   Judgment awarding each Plaintiff their legal fees and costs pursuant to 42 *U.S.C.* §1988; and

**J.)**    Judgment awarding any such further relief as just, fair and equitable.


Richard T. Luzzi, Esq.
ATTORNEY FOR PLAINTIFFS

DATED: May 11, 2016

## VERIFICATION:

SCOTT NEUMAN hereby certifies as follows:

1.      I am a Plaintiff in the above matter and as such I am familiar with all facts regarding this case and the claims made herein.

2.      All facts contained herein are true and all exhibits attached hereto are true and accurate copies of the original documents.

## Declaration under 28 *U.S.C.* §1746:

I declare and certify under penalty of perjury that the foregoing is true and correct.

*EXECUTED ON* _____5/9_____ *, 2016.*

DATED: 5/9/16          _____
                                  SCOTT NEUMAN

## Certification in lieu of oath under New Jersey State Law:

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

DATED: 5/9/16          _____
                                  SCOTT NEUMAN

## VERIFICATION:

**TRACY CAPRIONI** hereby certifies as follows:

1.    I am a Plaintiff in the above matter and as such I am familiar with all facts regarding this case and the claims made herein.

2.    All facts contained herein are true and all exhibits attached hereto are true and accurate copies of the original documents.

### Declaration under 28 *U.S.C.* §1746:

I declare and certify under penalty of perjury that the foregoing is true and correct.

*EXECUTED ON* _____, *2016.*

DATED: _____

**TRACY CAPRIONI**

### Certification in lieu of oath under New Jersey State Law:

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

DATED: _____

**TRACY CAPRIONI**

## VERIFICATION:

**ROBERT DI BELLA** hereby certifies as follows:

1.      I am a Plaintiff in the above matter and as such I am familiar with all facts regarding this case and the claims made herein.

2.      All facts contained herein are true and all exhibits attached hereto are true and accurate copies of the original documents.

### Declaration under 28 _U.S.C._ §1746:

I declare and certify under penalty of perjury that the foregoing is true and correct.

_EXECUTED ON_ ___5-8-16___, _2016._

DATED: 5-8-16

_____
**ROBERT DI BELLA**

### Certification in lieu of oath under New Jersey State Law:

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

DATED: 5-8-16

_____
**ROBERT DI BELLA**

41

## VERIFICATION:

**PATRICIA LINDSEY-HARVEY** hereby certifies as follows:

1.     I am a Plaintiff in the above matter and as such I am familiar with all facts regarding this case and the claims made herein.

2.     All facts contained herein are true and all exhibits attached hereto are true and accurate copies of the original documents.

## Declaration under 28 *U.S.C.* §1746:

I declare and certify under penalty of perjury that the foregoing is true and correct.

*EXECUTED ON* _____, *2016.*


**DATED:**                                              **PATRICIA LINDSAY-HARVEY**


## Certification in lieu of oath under New Jersey State Law:

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.


**DATED:**                                              **PATRICIA LINDSAY-HARVEY**

43