***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCOTT NEUMAN, *et al.*,  :<br>  :<br>  Plaintiffs,  :<br>  :<br>v.  :<br>  :<br>OCEAN COUNTY DEMOCRATIC  :<br>COUNTY COMMITTEE, *et al.*,  :<br>  :<br>  Defendant.  :<br>  : | Civ. Action No.16-2701 (FLW)<br><br>**OPINION** |

**WOLFSON, United States District Judge**:

This action arises from the Ocean County Democratic Organization's ("OCDO") "Mini-Convention," at which the OCDO nominated and endorsed individuals to appear as the Democratic "Party Line" candidates on the Primary Election ballot in June 2016. Plaintiffs bring this action, alleging that Defendants[1] acted under color of state law by using a voting process to endorse and select candidates for the Party Line, in violation of 42 U.S.C. § 1983 and OCDO's Bylaws. Plaintiffs also name Ocean County Clerk Scott M. Colabella ("Colabella") as a defendant for injunctive purposes only. On May 26, 2016, the Court denied Plaintiffs Scott Neuman, Tracy Caprioni, Robert Debella, and Patricia Lindsay-Harvey's (collectively, "Plaintiffs") motion for preliminary injunctive relief in which they sought to remove defendant James Keady from being considered for endorsement by the OCDO and bar Mr. Keady from

---

[1] The named defendants consist of the following entities and individuals: Ocean County Democratic Candidate Selection Sub-Committee; Ocean County Democratic Organization; Wyatt Earp; Marta Harris; Chris Leitner; Brian White; Ronald Madensky; Kieran Pillion; James Keady; Michael Cooke; Edward Wolf; and Marianne Clemente (collectively, "Defendants").

1

being placed on the Party Line for the Third Congressional District. Presently before the Court are two separate motions: (a) Defendants' Motion to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiffs' failure to plead that Defendants are state actors within the meaning of § 1983; and (b) defendant Colabella's separate Motion to dismiss and Request to file a fee and cost application under Fed. R. Civ. P. 11(c). For the reasons set forth below, Defendants' Motions are **GRANTED**.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In New Jersey, a "Political Party" is created upon a candidate's solicitation of at least 10 percent of the votes cast in the State's most recent General Election. Compl. ¶ 34. After achieving political party status and having been certified as such by the Secretary of State, a political party must form a "State Committee" and a "County Committee" in each of New Jersey's 21 Counties. Compl. ¶ 34. Moreover, local "Election Districts" in each of New Jersey's Municipalities are entitled to elect, at the political primary elections in June, two Members to the County Committee in the County in which the Municipality is located. Compl. ¶ 34. The County Committee Members are then required to meet and vote for a "County Chairman" and a "County Vice-Chairman." Compl. ¶ 34. Subsequently, the State Committee and the various 21 County Committees are required, by statute, to formally adopt, and act in accordance with, committee "By-Laws," Rules, and Policies. Compl. ¶ 34.

The OCDO, a political organization established, created, and regulated by Title 19 of New Jersey State Statutes, adopted committee By-Laws, Rules, and Procedures, and elected a County Chairman and Vice-Chairman, in accordance with New Jersey State law. Compl. ¶¶ 7, 47. Pursuant to the authority granted to the elected Democratic County Chairman in Article VII of the By-Laws, an "Ocean County Democratic County Committee Candidate Selection Sub-

Committee" ("Sub-Committee") was appointed, consisting of approximately 20 or more Members of the County Committee in good standing. Compl. ¶ 49. The Sub-Committee was tasked with the responsibility of endorsing and selecting a candidate for the Party Line on the June Ocean County Primary Election Ballot for the United States House of Representatives. Compl. ¶ 49. According to Plaintiffs, the endorsement and awarding of the Party line to a given candidate may provide that candidate with an advantage in the Primary Election.

As in prior years, the Sub-Committee set forth, for the June Primary Election, an application process for congressional candidates seeking to be endorsed by the OCDO for the U.S. House of Representatives. Compl. ¶¶ 50-51. The application process required congressional candidates to file a written "Letter of Intent" and Resume, and to sit for an in person interview with the Sub-Committee, at which the candidate was questioned with regard to his or her political views and personal history. Compl. ¶¶ 50-51. After the application deadline, the pool of congressional candidates were reviewed by the Sub-Committee, which was then authorized to either refrain from, or make a recommendation in favor of, a given candidate. Compl. ¶ 51. In either event, the final decision with regard to which candidate was to be endorsed and awarded the Party Line on the Ocean County Primary Election Ballots in June was to be determined by a plurality vote by the OCDO Members that attended the Mini Convention, which took place on March 19, 2016. Compl. ¶ 51.

On March 15, 2016, less than one week before the Mini Convention, Plaintiffs allege that "last minute Rules" were proposed by the Members of the OCDO. Compl. ¶¶ 62-63. Under these Rules, "the 'Convention Chair' could appoint up to 5 persons to a 'Ballot Committee', up to five persons to a 'Credentials Committee', a Sergeant at Arms and an Assistant Sergeant at Arms, each who would get a ballot" at the upcoming Mini Convention. Compl. ¶ 63. The Rules also

3

created a new form of "At Large" Delegates, who were provided with a ballot for each Committee position that they held. Compl. ¶ 63. Thus, according to Plaintiffs, an At Large Delegate was potentially able to cast more than one vote at the Mini Convention, whereas "Regular Delegates," such as Plaintiffs, were only permitted to cast a single vote. Compl. ¶ 64.

After the new rules were adopted, defendant Keady, a non-resident of Ocean County, announced that he was seeking the endorsement of the OCDO at the Ocean County Mini Convention, despite not having submitted a Letter of Intent or Resume, or interviewing with the Sub-Committee. Compl. ¶ 66. At the March Ocean County Mini Convention, an objection was made to the aforementioned Rules which permitted various Committee Members to vote more than once, and permitted a "new candidate" to be considered for endorsement, as Mr. Keady was allegedly barred from consideration by the Committee By-laws, Rules, and Policies for having failed to participate in the mandatory application process. Compl. ¶ 68. Nevertheless, after the casted ballots were submitted and counted, Mr. Keady was awarded the endorsement and Party Line for the Third Congressional District for the U.S. House of Representatives. Compl. ¶ 71.

Thereafter, a two-count Complaint against Defendants was filed after the conclusion of the March Mini Convention.[2] Specifically, in Count I of the Complaint, Plaintiffs accuse Defendants of wrongfully conspiring so as to create and implement Rules diluting and

---

[2] Plaintiffs herein comprise (a) individuals who ran for the Office of Ocean County Freeholder, but did not receive an endorsement by the OCDO; and (b) elected Ocean County Members who cast their vote for a candidate seeking an endorsement by the Democratic Party in Ocean County. Compl. ¶¶ 3-6. Defendants, on the other hand, include (a) the OCDO and various related entities; (b) Executive and other Duly Elected Members of the OCDO; (c) the Party Line candidate and, while not specified, other individuals who appear to have sought the OCDO's endorsement; and (d) the Ocean County Clerk, defendant Colabella, who is solely "joined for injunctive relief purposes only." Compl. ¶¶ 7-21. Therefore, the named defendants, with the exception of Defendant Colabella, are associated with the OCDO and sued in their capacity as OCDO members only.

4

devaluating the single vote that Plaintiffs were permitted to cast at the OCDO's internal Mini Convention, in violation of Plaintiffs' rights under the First, Fourteenth, Fifteenth, and Nineteenth Amendments of the Constitution through 42 U.S.C. §1983. Moreover, in Count II of the Complaint, Plaintiffs assert that Defendants violated their own internal By-Laws and existing Rules and Policies by improperly adopting and implementing Rules that, *inter alia*, permit certain Committee Members to cast more than one ballot.[3]

Subsequent to the filing of Plaintiffs' Complaint, Plaintiffs filed a Motion for preliminary injunctive relief, seeking to remove defendant Keady from being considered for endorsement by the OCDO, and to prevent Keady from being placed on the Party Line for the Third Congressional District Primary Election. Plaintiffs' Motion for emergent relief was denied because this Court did not have sufficient time to make an informed and reasoned decision, in light of the fact that Plaintiffs' Complaint and Motion were inexcusably filed one month prior to the June 7, 2016 Primary Election. On May, 25, 2016, defendant Colabella submitted a letter to Plaintiffs, in which he requested to be dismissed from this action, and attached a proposed Motion to dismiss and Request to file for sanctions under Rule 11. However, Plaintiffs refused to voluntarily dismiss defendant Colabella. Ultimately, Plaintiffs' Motion for emergent relief was denied because this Court did not have sufficient time to make an informed and reasoned decision, in light of the fact that Plaintiffs' Complaint and Motion were inexcusably filed one month prior to the June 7, 2016 Primary Election.

Now, Defendants move to dismiss Plaintiffs' claims, and defendant Colabella separately seeks dismissal of Plaintiffs' claims against him, and request to file sanctions under Fed. R. Civ.

---

[3] Plaintiffs have failed to identify a specific cause of action in the second count of their Complaint; it appears that Defendants' alleged failure to abide by the OCDO's internal By-Laws, Rules, and Policies amount to violations under unspecified New Jersey state law.

P. 11(c). In their Motion to dismiss, Defendants argue that the Complaint does not assert any identifiable causes of action against them, because Defendants are not state actors within the meaning of 28 U.S.C. § 1983. In response, Plaintiffs oppose both Motions, arguing that the members of the OCDO engaged in state action within the meaning of 28 U.S.C. § 1983 by "using a voting selection process to determine candidate endorsement." Compl. ¶ 42.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**III.   DISCUSSION**

    **A.   Section 1983's Threshold Requirement of State Action Has Not Been Met**

A threshold requirement for any suit brought under § 1983 requires state action. Thus, in the instant matter, Plaintiffs' claims turn on whether Defendants acted "under color" of the law by endorsing and selecting candidates for the "Party Line." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). In that connection, Plaintiffs argue that the delegated members of the County Committee are state actors, relying on the Supreme Court decisions in *United States v. Classic*, 313 U.S. 299 (1941), *Smith v. Allwright*, 321 U.S. 649 (1944), and *Terry v. Adams*, 345 U.S. 461 (1953), and the Third Circuit decision in *Max v. Republican Committee of Lancaster County,* 587 F.3d 198 (3d Cir. 2009). Plaintiffs' Memorandum of Law in Opposition to

7

Defendants' Motion to Dismiss ("Pls.' Opp'n"), at 10; Compl. ¶ 41. Pursuant to these decisions, Plaintiffs contend that Defendants engaged in state action under § 1983, because they partook in statutorily authorized and regulated conduct by "using a voting or selection process to determine candidate endorsement and 'Party Line' permission for candidates." Compl. ¶¶ 41-42. However, while state action can be imputed to private groups, as further discussed *infra*, the Court finds that Plaintiffs' argument, here, is without merit.

As noted by the Supreme Court, "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place . . . under color of state law." *Lugar*, 457 U.S. at 924. The "under color" requirement in cases arising under § 1983 "has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *In United States v. Price*, 383 U.S. 787, 794 n.7 (1966). Accordingly, before liability under § 1983 attaches, the complained of conduct must be "fairly attributable to the State." *Lugar*, 457 U.S. at 937.

Conduct will be fairly attributable to the state in each of the following two circumstances: (a) the individual or entity charged is a state actor, or (b) "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the latter may be fairly treated as that of the State itself." *Sullivan*, 526 U.S. 40, 41 (1999) (internal citation and quotations omitted); *Edmonson*, 500 U.S. 614, 620 (1991) ("[G]overnmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government . . . ."). A sufficiently close nexus between a non-state actor and a state actor requires more than the state's "[m]ere[] approv[al] of or acquiesce[nce] in the initiatives of a private party"; rather, to be held responsible for private activity, a state must exercise "coercive power or . . . provide[] such significant encouragement, either overt or covert,

8

that the choice must in law be deemed to be that of the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982) (internal quotations omitted).

On the other hand, if the accused party or entity is not a state actor, § 1983 cannot be implicated. Indeed, "merely private conduct, no matter how discriminatory or wrongful," does not fall within the ambit of § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999) (internal citations and quotations omitted); *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("As a general matter[,] the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights.") (internal citation and quotations omitted); *Edmonson*, 500 U.S. at 620 ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances").

The issue whether political parties' endorsement and selection of "Party Line" candidates suffice as state action for the purposes of § 1983 liability has been clearly addressed by the Third Circuit in *Max v. Republican Committee of Lancaster County*. The plaintiff in that case was an elected committee woman for the Republican Committee of Lancaster County ("RCLC"), a political organization organized under the laws of Pennsylvania, empowered with the authority to nominate candidates at primaries for inclusion on the general election ballot. *Max*, 587 F.3d at 199. The plaintiff brought a § 1983 claim against the RCLC, and various related entities and individuals, including: the Lancaster County Republican headquarters, a nonprofit corporation controlled by the RCLC, David M. Dumeyer, the Chairman of the RCLC, and Andrew Heath, an executive director of the RCLC. *Max*, 587 F.3d at 199. According to the plaintiff, the RCLC allegedly attempted to "manipulate and influence" who was placed on the Commonwealth's 2007 General Election ballot by excluding and limiting the plaintiff's "unwanted political

speech" during the primaries, in violation of her First Amendment right, as she was unwilling to support the endorsed candidate of the RCLC. *Max*, 587 F.3d at 199.

The *Max* defendants filed a motion to dismiss, in which they argued that they were not state actors within the meaning of § 1983. *Max*, 587 F.3d at 200. Relying on *Smith* and *Terry*—the same Supreme Court cases relied upon by Plaintiffs here—the plaintiff there maintained that the RCLC was a state actor because it was accorded with the authority to decide who will appear on the state's general election ballot. *Max*, 587 F.3d at 200. The Third Circuit, however, was unpersuaded by the plaintiff's argument, and began its analysis by distinguishing between the role of the RCLC and that of the electorate:

> [In arguing that the RCLC is a state actor because it engages in statutorily authorized conduct, plaintiff] fails to distinguish between the RCLC, which endorses candidates in the primary, and the corpus of registered Republican voters who, by voting in the primary election, actually select the nominees for the general election . . . . Thus, it is the registered Republican voters of Lancaster County, not defendants, to whom Pennsylvania has delegated authority to perform the public function of selecting the Republican candidates to be placed on the ballot for the general election.

*Max*, 587 F.3d at 200-01. The Third Circuit continued its analysis by citing to *Valenti v. Pennsylvania Democratic State Committee*, 844 F. Supp. 1015, 1019 (M.D. Pa. 1994), and *Blank v. Heineman*, 771 F. Supp. 1013, 1014-15 (D. Neb. 1991), decisions in which both district courts "declined to elevate internal party issues to a constitutional level." *Max*, 587 F.3d at 202. In so doing, the Third Circuit emphasized that the alleged harm: (a) was directed towards a plaintiff who was *associated* with the party, (b) and, significantly, related to the RCLC's internal "candidate-selection process." *Max*, 587 F.3d at 202 ("The instant case involves an alleged attempt by a political party to violate the rights of a party member. This distinction is key.") (emphasis added). In that regard, the conduct raised by the plaintiff related only, the court reasoned, to the internal affairs of the RCLC:

10

> Defendant[s'] actions toward Plaintiff were not state actions that would subject Defendants to *Section 1983* claims. Defendants' actions were internal to the party and are permissible by statute of the Commonwealth of Pennsylvania, *25 P.S. § 2837*, and by the *First* and *Fourteenth Amendments of the United States Constitution*. Plaintiff is correct that the RCLC has a role as a state actor in primary elections, . . . but that does not make all of RCLC's actions state actions, as Plaintiff contends.

*Max*, 587 F.3d at 202. Thus, the Third Circuit ultimately held that the endorsement process by which a political party selects a candidate to represent its political platform constitutes internal party affairs that are not subject to "judicial meddling," and do not constitute state activity within the meaning of § 1983. *Max*, 587 F.3d at 201-03.

Similarly, here, the facts before this Court fit squarely within the holding promulgated by the Third Circuit in *Max.* First, Plaintiffs consist, entirely, of individuals who are associated with the party, and this action is brought against other party Members, Executives, and Entities that are affiliated with the OCDO.[4] Despite not being named as the Party Line candidates, Plaintiffs do not allege that they were prevented by the OCDO from appearing on the June Primary Ballot as candidates, albeit not as the Party Line candidate; rather, Plaintiffs solely take issue with the OCDO's own candidate-selection process by which Mr. Keady was named as the Party Line candidate. Furthermore, Plaintiffs do not allege that an elector's right to vote was hindered by barring him or her from participating in the state's primary, nor do they allege that the OCDO inappropriately selected a candidate for the general election by manipulating and incorrectly counting and certifying the ballots of votes cast in the June Primary Election. These particular

---

[4] The Court notes that Mr. Colabella, who serves as the Ocean County Clerk, is named in the Complaint as a defendant, because he was responsible for configuring and printing the Election Ballots for the June Primary. Although Mr. Colabella was named as a defendant in his capacity as a state actor, this fact does not impact the determinination whether the alleged conduct by other defendants constitutes state action, because Mr. Colabella was "joined for injunctive relief purposes only." Compl. ¶ 21.

11

actions, as discussed *infra*, could transfer a political party's action into that of the State. Therefore, Plaintiffs' argument is foreclosed by the *Max* decision, as conduct by the OCDO pertaining to the endorsement and selection of a candidate for the Party Line constitutes internal party conduct, and, as a result, does not amount to state action for purposes of attaching § 1983 liability. *Lynch v. Torquato*, 343 F.2d 370, 372 (3d Cir. 1965) ("[T]he normal role of party leaders in conducting internal affairs of their party . . . does not make their party offices governmental offices or the filling of these offices state action."); *Valenti v. Pennsylvania Democratic State Committee*, 844 F. Supp. 1015, 1019 (M.D. Pa. 1994) ("[T]he conduct of party leaders involving the internal affairs of the party is not state action."); *Blank*, 771 F. Supp. at 1014-15 ("The Court finds plaintiffs' argument which attempts to 'bootstrap' and transform actions relating solely to the internal activity of a political party into activity which constitutes state action to be unpersuasive.").[5]

---

[5] The majority of Plaintiffs' Opposition appears to argue that Defendants' endorsement process was unfairly biased against Plaintiffs, so that Plaintiffs were deprived of an opportunity to appear on the "Party Line," in violation of their constitutional rights. *See* Pls.' Opp'n, at 11-20. However, these contentions are irrelevant for the purposes of this motion, as they fail to establish the threshold issue of whether Defendants are State Actors within the meaning of § 1983. While this Court does not reach the merits of Plaintiffs' claims, I nonetheless point out the fallacy in Plaintiffs' arguments; the Supreme Court has consistently found that the framework of a political party's endorsement process, and ultimate selection of a candidate for the "Party Line" is protected by the rights of association and speech, pursuant to the First and Fourteenth Amendment of the Constitution. *New York State Board of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008) ("A political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform.") (internal citations omitted); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) ("In no area is the political association's right to exclude more important than in the process of selecting its nominee . . . . The First Amendment reserves a special place, and accords a special protection, for that process . . . because the moment of choosing the party's nominee is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power.") (internal citation omitted); *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) ("There can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire . . . . Freedom of association therefore

To distinguish themselves from the holding of *Max*, Plaintiffs refer to the portion of the *Max* decision which states that, in some circumstances, a political party, although a private entity, may engage in state action. *Max*, 587 F.3d at 203 ("[T]here may well be situations where the actions of a political party in a primary election are deemed to be state action."). Relying on this language, it appears that Plaintiffs argue that Defendants are state actors within the meaning of § 1983, because they are acting pursuant to "the State of New Jersey's specifically delegated authority in the United States Constitution to regulate the '*Times*, *Places and Manner of holding Elections for . . . Representatives. . . .*'"[6] Pl's Opp'n, at 18. In other words, Plaintiffs contend that the OCDO is a state actor because it is a political party regulated, registered, and accorded the authority to take action by the State of New Jersey. However, these reasons, alone, are insufficient to transform the internal actions of a private political party to that of the State, for the purposes of attaching liability under § 1983. *Blum*, 457 U.S. at 1004 ("The mere fact that [an entity] is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.") (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Given that the alleged wrongdoings, in the instant matter, are substantially similar to the conduct at issue in *Max*, the Court does not find that the particular facts of this case fall outside of the circumstances considered by the *Max* Court.

---

plainly presupposes a freedom not to associate.") (internal citation omitted); *Democratic Party of United*, 450 U.S. 107, 122 n.22 (1981) ("'Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.'") (internal citation and quotations omitted).

[6] The Court notes that in *Max*, the Third Circuit held that the RCLC was a private entity, despite being registered with, and regulated by the state of Pennsylvania. *Max*, 587 F.3d at 199. ("The RCLC is a political committee organized under the laws of the Commonwealth of Pennsylvania.").

Although the *Max* decision clearly distinguishes two of the three aforementioned Supreme Court cases upon which Plaintiffs rely, Plaintiffs, nonetheless, argue that *Smith* and *Terry*, cases in which the State of Texas permitted the Democratic Party to adopt rules limiting who could vote in the democratic primaries, are dispositive to this Court's determination that Defendants are state actors. Pl's Opp'n, at 11. I disagree.

In accordance with their state delegated authority, the Democratic Party, *in Smith*, attempted to exclude African American citizens from voting in Texas's democratic primary elections, by adopting the following resolution:

> Be it resolved that all white citizens of the State of Texas who are qualified to vote under the Constitution and laws of the State shall be eligible to membership in the Democratic party and, as such, entitled to participate in its deliberations.

*Smith,* 321 U.S. at 656-57. Similarly, in *Terry*, the Jaybird Democratic Association attempted to bar African Americans from participating in its primaries, on racial grounds. *Terry*, 345 U.S. at 462. Plaintiffs, in *Smith* and *Terry*—African Americans prohibited from exercising their right to vote—challenged these racial exclusions as unconstitutional state action within the meaning of the Fifteenth Amendment. *Smith,* 321 U.S. at 651-52; *Terry*, 345 U.S. at 462-63. The Democratic Party, in both *Smith* and *Terry*, argued that its discriminatory practices were not in violation of the Fifteenth Amendment, because the Democratic Party is a private entity, not a state actor. *Smith,* 321 U.S. at 657; *Terry*, 345 U.S. at 478-79. However, the Supreme Court disagreed, and converted the actions of the Democratic Party into that of the state, for the purposes of imposing liability under the Fifteenth Amendment, because the state of Texas was attempting to circumvent the protections afforded under the Fifteenth Amendment by allowing a private political organization to engage in discrimination by limiting primary participation to white voters only. *Terry,* 345 U.S. at 467 ("[T]he constitutional right to be free from racial

14

discrimination in voting . . . 'is not to be nullified by a State through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election.'") (quoting *Smith*, 321 U.S. at 664.)

The holdings in both *Smith* and *Terry* were distinguished by the *Max* decision on multiple grounds, the first being that, in both cases, the State had acted in concert with the Democratic Party in order to impose a constitutional harm upon a group of individuals based on their race. *Max*, 587 F.3d at 201. The Third Circuit further held that *Smith* and *Terry* were distinguishable because they "involved attempts by a political party to violate the rights of persons who were not associated with the party," as opposed to its own members. *See Max*, 587 F.3d at 201. Similarly, Plaintiffs, here, do not allege that New Jersey "delegated authority to defendants with the intention of violating the constitutional rights of [Plaintiffs] or anyone else." *Max*, 587 F.3d at 201. Indeed, Plaintiffs have not alleged that the disputed conduct was a byproduct of "the fingerprints of the state." *Leshko v. Servis,* 423 F.3d 337, 340 (3d Cir. 2005).

Furthermore, in *Smith* and *Terry*, the conduct at issue interfered with the role of the electorate, "who [are] not associated with the party." *Max*, 587 F.3d at 201. As a result of the Democratic Party's actions, various members of the electorate were incapable of exercising their constitutional right to choose a candidate for the general election. In contrast, the alleged harm, here, was done by, and directed towards, various Members of the OCDO only. Indeed, the allegations in the Complaint are confined to the OCDO's internal candidate-selection process by which defendant Keady was awarded the Party Line. In other words, despite Plaintiffs' assertions, the function of the electorate in selecting candidates for the office of the U.S. House of Representatives was not alleged to have been interfered by the OCDO, and indeed, Plaintiffs have not alleged they were prevented by the OCDO from appearing on the primary ballot, albeit

15

not as the Party Line candidate. Accordingly, Plaintiffs' reliance on the aforementioned Supreme Court decisions is misplaced, and Plaintiffs cannot establish that Defendants are state actors for purposes of § 1983 liability. Count 1 of the Complaint is dismissed.[7]

The Court, having dismissed Count I, must consider whether to exercise supplemental jurisdiction over the second count of Plaintiffs' Complaint which is based on state law. In making such a determination, it is within this Court's discretion to refrain from exercising supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367. In that connection, because Count 1 of the Complaint has been dismissed, the Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state-law based claim. Instead, the Court dismisses that claim without prejudice to Plaintiffs refiling their Complaint in state court pursuant to 28 U.S.C. § 1367(d). Under that statute, Plaintiffs shall have 30 days from the date of Order accompanying this Opinion to file in state court, and during such period, the statute of limitations is tolled.

---

[7] In arguing that Defendants are state actors, Plaintiffs also rely on *United States v. Classic*, a Supreme Court decision that was not addressed in the *Max* Opinion. Even so, the *Classic* decision is distinguishable. In *Classic*, the defendants, state election officials, were charged with falsely counting and altering ballots cast in a primary election for the purpose of nominating a Democratic candidate for the House of Representatives. *Classic*, 313 U.S. at 307-08. The Supreme Court held that such actions effectively interfered with a citizen's right to vote, as secured by the Constitution, within the meaning of §§ 19 and 20 of the Criminal Code, 18 U.S.C. §§ 51-52, regardless of whether the votes were in relation to a primary, as opposed to a general election. *Classic*, 313 U.S. at 320-29. Accordingly, the alleged harm in *Classic* impacted registered Democratic voters, or individuals outside of the Democratic Party. In contrast, the alleged harm here was the result of internal party actions taken by various Members of the OCDO, against other Members of the OCDO, and pertained to the OCDO's own candidate-selection process. Therefore, Plaintiffs' reliance on the Supreme Court's decision in *Classic* is inapt.

### B. Defendant Colabella's Motion to Dismiss and Request to File for Sanctions Pursuant to Rule 11 is Granted

Plaintiffs do not assert any causes of action against defendant Colabella in their Complaint. Instead, Plaintiffs' Complaint includes a paragraph, which states as follows:

> Defendant Ocean County Clerk Scott M. Colabella is charged by New Jersey Law with preparing the Primary Election Ballots and Sample Ballots and is joined as a party Defendant *strictly so that there is jurisdiction for the Court to enter temporary and permanent injunctive relief* as requested herein and as may be necessary.

Compl. ¶ 80 (emphasis added). Accordingly, the sole requested relief sought by Plaintiffs from Defendant Colabella concerns the ballots and sample ballots in connection with the Primary Election for the Third Congressional District. However, the Primary Election occurred in June 2016, and more importantly, this Court previously denied Plaintiffs' Motion in which they sought an appointment of a Special Master and requested a new Mini Convention in compliance with the OCDO's prior Bylaws. Therefore, because defendant Colabella was included for no other purpose but to obtain injunctive relief—which this Court denied— and, there are no claims against defendant Colabella in the Complaint, it is appropriate to dismiss him from this matter.

In addition, Defendant Colabella moves for permission granted for a fee and cost application under Fed. R. Civ. P. Rule 11. *See* Colabella's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) ("Def. Colabella's Mot. to Dismiss"). Colabella notes that "the sole requested relief against [him] concerns ballots and sample ballots in the Third Congressional District for the June 7, 2016 primary election." Def. Colabella's Mot. to Dismiss, at 4. However, because the New Jersey Democratic Primary already occurred on June 7, 2016, defendant Colabella reasons that "[t]he proverbial horse has left the barn concerning the requested relief sought by Plaintiffs against [Colabella]." Def. Colabella's Mot. to Dismiss, at 4. Therefore, according to defendant Colabella, Plaintiffs' refusal to dismiss Colabella after the primary has concluded, despite his

17

safe harbor letter to Plaintiffs, is solely an attempt by the Plaintiffs to harass and increase the cost of litigation.

The underlying policy of Rule 11 is to deter actions that are "frivolous, legally unreasonable, or without factual foundation . . . . " *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (internal quotations omitted). In achieving that end, under Rule 11(c), "the court may impose an appropriate sanction on any attorney, law firm, or party that violate[s] [r]ule [11(b)] or is responsible for the violation." *See* Fed. R. Civ. P. 11(c)(1). Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Accordingly, "Rule 11 imposes a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and law which forms the basis of a pleading or motion." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994) (internal citations and quotations omitted).

In considering whether to grant Rule 11 sanctions, "a district court must determine whether the attorney's conduct was objectively reasonable under the circumstances." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010).

18

Reasonableness has been defined by the Third Circuit as the "'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1359 (3d Cir. 1990). Significantly, a showing of bad faith is not required by the party moving to impose Rule 11 sanctions. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995).

In the instant matter, Plaintiffs argue that "Defendant Colabella "strangely seeks to view this case in a vacuum as being limited to only injunctive remedy that could be obtained by Plaintiff before and relative only to the June 7, 2016 Political Party Primary Election." Pls.' Opp'n, at 3 (emphasis omitted). In that connection, Plaintiffs argue that defendant Colabella is a necessary party, as Plaintiffs have moved for 10 separate "Requests for Relief," citing paragraphs (C) and (J) of the Complaint, which state:

> (C) Judgment pursuant to 42 U.S.C. § 1983, 28 U.S.C. §2202 (the Federal "Declaratory Judgment Act") and Rule 66, and 28 U.S.C. §1361 (the Federal "Mandamus Act") and Rule 57 appointing a "Special Master" to be paid by Defendants, and Ordering Defendants to, under the supervision of the appointed "Special Master", conduct a new "Mini Convention" and election without using "At Large Delegates" and limiting those eligible to vote on the endorsement of a given candidate to only those "Regular Delegates" who can vote for the office of the candidate at issue at the General Election;
>
> . . .
>
> (J) Judgment awarding any such further relief as just, fair and equitable.

Compl. ¶¶ (C), (J).

Here, Plaintiffs argue that the retention of defendant Colabella is required for this Court to provide an appropriate remedy. As described above, however, Plaintiffs' Motion, in which they previously sought to "appoint[] a Special Master to oversee a re-vote with the 'one man - one vote" [and] enforce[e] the earlier existing policies and Democratic Committee Rules," was

denied by this Court. Plaintiffs' Memorandum of Law in Support of its Application for Injunctive Relief, at 2. Therefore, Plaintiffs have no adequate jurisdictional basis to justify the retention of Defendant Colabella as a defendant, since Plaintiffs already were aware that they would not be entitled to a new Mini Convention. In addition, the issue whether to conduct another Mini Convention is moot, as the Democratic Primary Election in dispute was held in June of 2016, approximately eight months from the date of this Opinion. Similarly, Plaintiffs do not explain how Paragraph (J) would necessitate the retention of Defendant Colabella in this matter. Therefore, the Court finds it appropriate for Colabella to file a cost and fee application under Rule 11.

### IV.   CONCLUSION

For the foregoing reasons, defendant Colabella's Motion to Dismiss and Request to file a fee and cost application under Rule 11 is **GRANTED**; his Motion for fee and costs shall be filed within 30 days of the date of this Opinion and accompanying Order. Defendant Colabella is dismissed from suit. Defendants' Motion to dismiss Count I of Plaintiffs' Complaint is also **GRANTED**. The Court declines to exercise supplemental jurisdiction over Count II of the Complaint, and therefore, that claim is dismissed without prejudice to Plaintiff to refile it in state court pursuant to 28 U.S.C. § 1367.

Dated: January 30, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge